1  **MICHAEL N. FEUER,** City Attorney - SBN 111529
   **THOMAS H. PETERS,** Chief Assistant City Attorney – SBN 163388
2  **CORY M. BRENTE,** Assistant City Attorney – SBN 115453
   **COLLEEN R. SMITH**, Deputy City Attorney – SBN 209719
3  200 North Main Street, 6th Floor, City Hall East
   Los Angeles, CA 90012
4  Phone No.: (213) 978-7027
   Fax No.:   (213) 978-8785
5  Email: colleen.smith@lacity.org

6  *Attorneys for Defendants* **CITY OF LOS ANGELES, VICTOR PARTIDA and JEREMY PAIZ**

7

8                   **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| MARIA HERNANDEZ; A.J., JR., by and through his guardian *ad litem* Gladys Lario; S.J., by and through her Guardian *ad litem* Veronica Valle; D.J., by and through her guardian *ad litem* Jasmin Santos; D.J., also by and Through her guardian *ad litem* Jasmin Santos; J.T., by and through his guardian *ad litem* Cindy Torres; and A.J., by and through her guardian *ad litem* Patricia Morales, in each case individually and as successor in interest to Alex Jimenez, deceased,<br><br>          Plaintiffs,<br>vs.<br><br>CITY OF LOS ANGELES and DOES 1-10, inclusive,<br><br>          Defendants. | CASE NO.: CV16-02689 AB(JEMx)<br>*Hon. Andre Birotte Jr., 7B, 7th Fl.*<br>*Hon. Mag. John E. McDermott, Ctrm. 640, 6th Fl.*<br><br>**DEFENDANTS' NOTICE OF MOTION AND FIRST MOTION IN LIMINE TO PRECLUDE PLAINTIFFS' EXPERT, RONALD O'HALLORAN FROM OPINING OR TESTIFYING IN ANY MANNER AS TO POSITIONAL ASPHYXIATION AND ALEX JIMENEZ'S CAUSE OF DEATH**<br><br>[Filed concurrently with Declaration of Colleen R. Smith and Exhibits}<br><br>PRE-TRIAL CONF.<br>DATE:   FEBRUARY 9, 2018<br>CTRM:   Courtroom 7B, 7th Floor<br>TIME:   11:00 a.m.<br><br>TRIAL<br>DATE:   FEBRUARY 20, 2018<br>CRTM:   Courtroom 7B, 7th Floor<br>TIME:   8:30 a.m. |

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

1

PLEASE TAKE NOTICE THAT Defendants CITY OF LOS ANGELES, VICTOR PARTIDA and JEREMY PAIZ, will and hereby do move this Court, before trial and prior to jury selection, for the following order *in limine* prohibiting Plaintiffs' expert witness, Ronald O'Halloran, from testifying or offering any opinions as to positional asphyxiation, its role in this incident and Alex Jimenez's cause and manner of death.

This Motion is made pursuant to FRE 401 and 702 and *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579 (1993).

Defendants initially met and conferred with Plaintiffs' counsel on the substance of this motion in limine on January 4, 2018. The parties were unable to work out a stipulation on the substance of this motion in limine.

This Motion also is based upon the supporting Memorandum of Points and Authorities; the Fed. Rules of Civ. Proc., Rule 26, expert report of Ronald O'Halloran; deposition of Ronald O'Halloran, the papers and pleadings on file in this action; and upon such further matters which may be presented at or before the hearing on this Motion.

Dated: January 19, 2018  **MICHAEL N. FEUER,** City Attorney
**THOMAS H. PETERS,** Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney

By: _____/S/*Colleen R. Smith*_____
**COLLEEN R. SMITH**, Deputy City Attorney
*Attorneys for Defendants* **CITY OF LOS ANGELES, VICTOR PARTIDA and JEREMY PAIZ**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION.**

This case arises from the death of Alex Jimenez following his interaction with members of the Los Angeles Police Department. On April 13, 2015, Mr. Jimenez ingested illegal drugs and vandalized his parents' apartment. At the request of his mother, his adult sister called 9-1-1 and requested help. Police officers responded and learned that Mr. Jimenez had ingested illegal drugs and vandalized the apartment. During their investigation, they handcuffed Mr. Jimenez, and escorted him to their patrol vehicle. The officers also called for a rescue ambulance due to Mr. Jimenez's behavior and ingesting of drugs. Before they were able to place Mr. Jimenez into the back seat, Mr. Jimenez suddenly fell down and pulled one of the officers down on top of him. There was a brief struggle with Mr. Jimenez and he began vomiting clear liquid. The officers, who had brief contact with Mr. Jimenez, placed him in a lateral position and waited for the ambulance. The paramedics transported Mr. Jimenez to the hospital where he was pronounced dead. An autopsy was later performed. The emergency room doctor and the medical examiner both determined that Mr. Jimenez died as a result of methamphetamine use and that the police officers did not contribute in any way to his death.

Plaintiffs filed the instant lawsuit and have retained Ronald O'Halloran, M.D., as their expert on positional asphyxiation. *See* Plaintiffs' expert disclosures and Rule 26 report of Ronald O'Halloran attached to the declaration of Colleen R. Smith as Exhibits "A" and "B". Dr. O'Halloran should be excluded from testifying at trial in this matter on the issue of positional asphyxiation, its alleged role in this incident and the cause and manner of Mr. Jimenez's death pursuant to FRE 401, 403 and 702. His testimony does not meet the requirements under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and its progeny. Dr. O'Halloran's opinions are unreliable, as his Rule 26 report and his

deposition testimony show that his opinions are based on his own personal ideas, are mere speculation and conjecture, based on hearsay and are without any factual support.

As Dr. O'Halloran's "expert opinions" on the issues of positional asphyxiation, its alleged role in this incident and the cause and manner of Mr. Jimenez's death will not assist the jury in determining liability on any of the issues in this case.

II. **DR. RONALD O'HALLORAN SHOULD BE EXCLUDED FROM TESTIFYING AND OFFERING ANY OPINIONS AS TO POSITIONAL ASPHYXIATION, AS HIS PROFFERED TESTIMONY WILL NOT ASSIST THE TRIER OF FACT IN DECIDING ANY OF THE ISSUES.**

Fed. Rules of Evid. 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* and its progeny have set forth the four elements that must be met before a proposed expert's testimony will be allowed. The courts should only allow a proposed expert's testimony if it will 1) assist the trier of fact in determining or understanding the facts in issue, 2) the proposed expert testimony is relevant, 3) if the proposed expert

4

witness is sufficiently qualified and 4) if there is a reliable basis for expert's opinions and testimony. FRE 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

In addition, an expert's testimony must rest on a reliable foundation in order to be admissible. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 597 (1993). As part of its gate-keeping function, the Court is supposed "supposed to screen the jury from unreliable nonsense opinions,. ..." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

Expert testimony is reliable, and thus admissible, "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Fed. R. Evid. 702*. Expert qualifications, including adequate and relevant training and experience, are required to lay the foundation for the expert's opinion; otherwise, it is mere "unsupported speculation." *See Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev., Inc.*, 371 F. App'x 719, 720 (9th Cir. 2010). Further, the facts or data upon which the expert relies must either themselves be admissible or "of a type reasonably relied upon by experts in the particular field of forming opinions or inferences upon the subject." *Fed. R. Evid. 703*. "'[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (citations omitted).

Factors relevant to the reliability of expert testimony are whether the conclusion can and has been tested; whether the theory has been peer reviewed and published; and whether there is a known or potential rate of error, and what it is. *Daubert*, *supra*, 509 U.S. at 593-4. Widespread acceptance by the community of experts also is important. *Id*. at 594. Because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," a court has more control over experts than lay witnesses under *Fed. R. Evid. 403*. *Id.* at 595.

Here, Dr. O'Halloran's report and deposition testimony show that he cannot pass the reliability hurdle, or any of the other hurdles, required before he can opine on positional asphyxiation, its role in this incident and the cause and manner of Mr. Jimenez's death. Dr. O'Halloran admits that he has no personal knowledge of what occurred in this case. Therefore, Dr. O'Halloran is required to base his opinion on matters that are *reasonably* relied upon by experts in the area of positional asphyxiation.

Dr. O'Halloran's report also states that he does not have enough information to say to a reasonable degree of medical probability that positional asphyxiation played any role in Mr. Jimenez's death. He admits that the facts are in dispute and that he would need more information to conclude the cause of death was restraint, or positional asphyxiation. *See* Exhibits "A", p. 6 and "B", p. 127.

Dr. O'Halloran admits that he does not know the positions of the officers and Mr. Jimenez, what percentage of weight was on Mr. Jimenez's back or for how long. *See* Exhibit "B", pp. 32, 112 and 114-116. Dr. O'Halloran does not know when the prone restraint, if any, began. *See* Exhibit "B", p. 32. He also admits that the time estimates on which he bases his opinion are not exact and are his own estimates. *See* Exhibit "B", p. 112.

Dr. O'Halloran further admits that the amount of time and amount of weight he guesses was placed on Mr. Jimenez was not enough to cause restraint asphyxia. *See* Exhibit "B", p. 138. Dr. O'Halloran also testified at his deposition that there were too many conflicts in witness testimony as to the positions of Mr. Jimenez and the officers and the amount of time he was prone, so he cannot attribute the cause of death to restraint, or positional, asphyxia. *See* Exhibit "B", pp. 127-128. By his own testimony, positional asphyxiation did not play any role in this incident and was not a cause of Mr. Jimenez's death. Any opinions otherwise are unreliable, speculative and conjecture.

In fact, Dr. O'Halloran opined that Mr. Jimenez ultimately died from a fatal cardiac arrhythmia. *See* Exhibit "B", pp. 107-109. He also admits that the

methamphetamine levels found in Mr. Jimenez were three to four times the recreational level. *See* Exhibit "B", pp. 143-145.

As Dr. O'Halloran's opinions as to positional or restraint asphyxia in connection with this incident are unreliable, they are inadmissible and should be precluded. Allowing such speculative and unreliable opinions will not assist the trier of fact in determining or understanding the facts in dispute or the issues in this case. Moreover as Dr. O'Halloran admits, positional asphyxia did not play a role in Mr. Jimenez's death, and such opinions are irrelevant. *See* FRE 401 and 402; *Daubert*, *supra*, 509 U.S. at 597.

Accordingly, FRE 401, 402 and 702 and *Daubert* warrant that Dr. O'Halloran be precluded from offering any opinions as to positional asphyxia, its alleged role in this incident and the cause and manner of death of Mr. Jimenez.

**III. DR. RONALD O'HALLORAN'S OPINIONS AS TO POSITIONAL ASPHYXIA ALSO SHOULD BE EXCLUDED PURSUANT TO FRE 403.**

Allowing Dr. O'Halloran to offer opinions as to positional asphyxia that do not meet the requirements under FRE 702 and *Daubert* would be prejudicial to Defendants and not probative of any of the issues to be determined by the jury. Plaintiffs should not be allowed to introduce evidence that has no probative value. If this evidence were allowed, it would only serve to confuse and mislead the jury. The jury could be distracted by the terms "prone restraint" and could confuse the issues of positional asphyxia with the relevant issues in this case.

/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION.

Based on the foregoing, Defendants' motion in limine should be granted in its entirety.

Dated: January 19, 2018

**MICHAEL N. FEUER**, City Attorney
**THOMAS H. PETERS,** Chief Assistant City Attorney
**CORY M. BRENTE**, Assistant City Attorney

By: _____/S/*Colleen R. Smith*_____
**COLLEEN R. SMITH**, Deputy City Attorney
*Attorneys for Defendants* **CITY OF LOS ANGELES, VICTOR PARTIDA and JEREMY PAIZ**